Nathaniel JOHNSON, Jr.

v.

Stephen HARRIS, Office of the Public Defender and Harold Buchman, Office of the Public Defender.

Civ. A. No. M–80–165.

United States District Court,
D. Maryland.

Jan. 23, 1980.

Nathaniel Johnson, Jr., pro se.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, who is presently an inmate at the Maryland Penitentiary and who is acting *pro se*, seeks to file *in forma pauperis* an action for damages against the defendants pursuant to 42 U.S.C. § 1983. The defendants are both attorneys who served as court-appointed counsel for the plaintiff in connection with his criminal prosecution by the State of Maryland. The plaintiff was initially represented at trial by defendant Harris, and was later represented on appeal by defendant Buchman. The gravamen of the plaintiff's complaint is that he was denied his constitutional rights through the alleged incompetent representation provided by both counsel. The plaintiff is seeking a new trial and five million dollars in damages.

In addressing the issue of civil liability of court-appointed counsel, the Fourth Circuit has stated that a public defender has absolute immunity from civil rights suits against him by his clients. *Minns v. Paul*, 542 F.2d 899 (4th Cir. 1976); *cert. den.*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977). The holding in that case, however, must be carefully re-examined in light of the recent Supreme Court decision in *Ferri v. Ackerman*, —— U.S. ——, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979).

In dismissing the plaintiff's cause of action in *Minns*, the Fourth Circuit stated:

"In addition to contending that he did not act under color of state law so as to give the district court jurisdiction under § 1983, [the defendant] argues that by virtue of his position as a court-appointed attorney, he should enjoy absolute immunity from suits alleging that he violated § 1983. Because we agree with the latter contention, we do not reach the question of whether [the defendant] acted under color of state law." *Minns v. Paul, supra*, at 890.

Thus the *Minns* decision was based solely on the immunity issue.

In *Ferri v. Ackerman, supra*, the Supreme Court held that an attorney appoint-

ed to represent an indigent defendant in a federal criminal proceeding is not, as a matter of federal law, entitled to absolute immunity in a state malpractice suit brought against him by his former client. While this decision appears to undercut the immunity basis of the Fourth Circuit decision in *Minns*, it still leaves open the question of whether a court-appointed attorney is subject to civil suit pursuant to 42 U.S.C. § 1983 as a result of alleged malpractice. The precise issue which must be addressed is whether court-appointed counsel, who are retained as a part of the state's public defender system, may be said to be acting "under color of" state law in representing indigent clients.

In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court reviewed the history of § 1983 in order to determine the meaning to be given to the phrase "under color of" state law. In *Monroe* the court reaffirmed the interpretation initially set out by Justice Stone in *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), as follows:

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *Id.* at 326, 61 S.Ct. at 1043.

The Eighth Circuit, in addressing this issue, has flatly stated:

"The conduct of counsel, either retained or appointed, in representing clients does not constitute action under color of state law for purposes of a § 1983 violation." *Harkins v. Eldredge*, 505 F.2d 802 (8th Cir. 1974); *See also, Barnes v. Dorsey*, 480 F.2d 1057 (8th Cir. 1973).

The Second Circuit, in a different context, reached a similar decision in *Lefcourt v. Legal Aid Society*, 445 F.2d 1150 (2nd Cir. 1971). The *Lefcourt* case involved a suit under § 1983 by an attorney against the defendant Legal Aid Society for wrongful discharge from employment. In affirming the dismissal of the plaintiff's cause of action, the court stated:

"Although the Society by contract has undertaken to make available to indigents legal services which otherwise governmental agencies might have to assume, its history, constitution, bylaws, organization and management definitely establish that it is a private institution in no manner under State or City supervision or control. Its very independence from any such control is an assurance that those who receive the benefits of its services will obtain these services in accordance with the highest standards of the Bar.

We conclude that *Lefcourt* has not shown State action in the activities of the Society of which he complains." *Id.* at 1157.

The Seventh Circuit, however, has reached the opposite conclusion in deciding *Robinson v. Bergstrom*, 579 F.2d 401 (7th Cir. 1978). In *Robinson*, the Court held that an appointed public defender who was a compensated employee of the city public defender's office acting on behalf of a state instrumentality, acted under color of state law through his representation of the plaintiff. In reaching this result, the court stated:

"Under an Illinois statute, in effect at the time of the acts complained of, the county public defender offices are established, compensation is permitted to be provided by the county, and offices are provided. The Champaign County Public Defender Office is plainly an instrumentality of the state. Under the [analysis in *Chalfant v. Wilmington Institute*, 574 F.2d 739 (3rd Cir. 1978)], this finding establishes state action. In *Chalfant* a private citizen, unpaid for his duties, was held to be acting under color of law because he acted on behalf of a state instrumentality. Similarly *Bergstrom*, a compensated employee of the county public defender's office, acted on behalf of a state instrumentality. In view of the office's inextricable relation to the state, no proof that the challenged acts are related to the state is necessary. The fact that the Public Defender is a state instrumentality is sufficient to show state action." *Id.* at 407–408.

Of course, *Robinson*, involving a fulltime employee of a public agency who was paid on a regular basis with public funds, is distinguishable from *Haskins* and *Lefcourt* cited above. But the different attitudes reflected in those cases relating to the functions of court-appointed counsel in criminal cases vis á vis the State make it useful to look again to the Supreme Court decision in *Ferri v. Ackerman, supra*. In deciding that an attorney appointed to represent an indigent defendant is not entitled to immunity in state malpractice proceedings, the Court distinguished the functions served by a judge or prosecutor from that served by defense counsel. The Court stated:

"As public servants, the prosecutor and the judge represent the interest of society as a whole. The conduct of their official duties may adversely affect a wide variety of different individuals, each of whom may be a potential source of future controversy. The societal interest in providing such public officials with the maximum ability to deal fearlessly and impartially with the public at large has long been recognized as an acceptable justification for official immunity. . . . In contrast, the primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serve pursuant to statutory authorization and in furtherance of the federal interest in insuring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the government and to oppose it in adversary litigation." *Id. Ferri v. Ackerman, supra*, —— U.S. at ——, 100 S.Ct. at 408–409.

Given this statement, along with the decisions previously discussed, the court is persuaded that court-appointed counsel in the normal situation do not act "under color of" state law, for purposes of liability under § 1983, in undertaking representation of indigent defendants in criminal cases. The function which court-appointed counsel serves is strictly analogous to that of retained counsel and is in no meaningful way dependent upon any authority derived from state law.

Thus, if the plaintiff wishes to claim damages against these defendants, his proper recourse is to file an attorney malpractice action in the state civil courts. The plaintiff may also be entitled to post-conviction or habeas corpus relief based on the theory of incompetent representation by counsel.

For the foregoing reasons it is ORDERED this 23rd day of January, 1980 by the United States District Court for the District of Maryland that:

1. Leave to file *in forma pauperis* is hereby Granted;

2. Plaintiff's complaint is hereby dismissed, without process being issued, as legally frivolous.